UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHIRLEY L. HARRIMAN,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendants.

Case No. 2:16-cv-01657-BHS-TLF

REPORT AND RECOMMENDATION

Noted for June 30, 2017

Shirley L. Harriman has brought this matter for judicial review of the Commissioner of Social Security's denial of her applications for disability insurance and supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends that the Court reverse the Commissioner of Social Security's decision to deny benefits and remand this matter for further administrative proceedings.

## INTRODUCTION

On January 24, 2014, Ms. Harriman filed an application for disability insurance benefits (DIB) and another one for disabled widow's benefits. She filed a third application for SSI benefits on April 10, 2014. In all three applications, she alleged that she became disabled beginning May 31, 2009. Dkt. 10, Administrative Record (AR) 23. The applications were denied on initial administrative review and on reconsideration. *Id.* A hearing was held on December 15,

REPORT AND RECOMMENDATION - 1

2015, before an administrative law judge (ALJ), at which Ms. Harriman appeared and testified, as did a vocational expert. AR 39-87. Ms. Harriman amended her alleged onset date to March 3, 2014, her fiftieth birthday. AR 23, 45-46.

In a written decision on February 22, 2016, the ALJ found that Ms. Harriman could perform her past relevant work and therefore was not disabled. AR 23-32. The Appeals Council denied Ms. Harriman's request for review on September 30, 2016, making the ALJ's decision the final decision of the Commissioner. Ms. Harriman filed a complaint on October 24, 2016, appealing that decision to this Court. AR 1-4; Dkt. 3; 20 C.F.R. §§ 404.981, 416.1481.

Ms. Harriman seeks reversal of the ALJ's decision and remand for an award of benefits, arguing the ALJ erred:

  (1)  in evaluating the medical evidence;

  (2)  in assessing Ms. Harriman's residual functional capacity (RFC);

  (3)  in finding Ms. Harriman could perform her past relevant work; and

  (4)  in finding Ms. Harriman could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court finds that the ALJ erred in evaluating the medical evidence. He therefore erred in assessing Ms. Harriman's RFC and finding she could perform her past relevant work and other jobs existing in significant numbers in the national economy. Accordingly, the Court finds that the decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

## DISCUSSION

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that

step and the sequential evaluation process ends. *See* 20 C.F.R. §§ 404.1520, 416.920. At issue here is the ALJ's evaluation of the medical evidence, his use of that evidence in assessing Ms. Harriman's RFC, and the ALJ's resulting conclusions at steps four and five that Ms. Harriman could perform both her past relevant work and other jobs.

This Court affirms an ALJ's determination that a claimant is not disabled if the ALJ applied "proper legal standards" in weighing the evidence and making the determination and if "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F. Supp. 522, 525 (E.D. Wash. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193. This requires "more than a scintilla of evidence" but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

This Court will thus uphold the ALJ's findings if "inferences reasonably drawn from the record" support them. *Batson*, 359 F.3d at 1193. If more than one rational interpretation can be drawn from the evidence, then this Court must uphold the ALJ's interpretation. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

I. <u>The ALJ's Evaluation of the Medical and Other Opinion Evidence</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir.1971)); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). As

part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

In general, the ALJ gives more weight to a treating physician's opinion than to the opinions of physicians who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Nonetheless, an ALJ need not accept a treating physician's opinion that "is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

To reject the uncontradicted opinion of either a treating or examining physician, an ALJ must provide "clear and convincing" reasons. *Lester*, 81 F.3d at 830. When other evidence contradicts the treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion." *Id.* at 830-31. In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Id.* Next, an ALJ gives greater weight to an examining physician's opinion than that of a nonexamining physician. *Id.* at 830. Finally, a

non-examining physician's opinion may constitute substantial evidence for an ALJ's findings if that opinion "is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149.

## A. Dr. Stephenson

Dr. Daniel Stephenson was Ms. Harriman's treating physician when he examined her between October and December 2013. *See* AR 29, 411-15, 422-26. In October 2013, he diagnosed Ms. Harriman with moderate and temporary lower back strain based on his review of a physical therapy evaluation. AR 412. He opined that this would limit Ms. Harriman to sedentary work for three months. AR 413. Ms. Harriman then underwent an MRI of the lumbar spine on October 30, 2013. On November 1, 2013, Dr. Stephenson found that

> [t]he MRI of the back did show several levels of moderate degenerative changes in the lumbar spine related to age. Also and more importantly it noted right sided disc herniation at L5/S1 level with the disc indenting the nerve root on that side as well as narrowing of the area going out of that vertebral area.

AR 432. He noted that he was consulting a neurosurgeon and concluded, "[w]hile this is important, as long as things do not get worse it is not an emergency." AR 432. Then in a December 30, 2013 "physical functional evaluation," Dr. Stephenson updated his diagnosis to moderate osteoarthritis that would limit "lifting, carrying, crouching, [and] pulling." AR 423. He opined that this limited Ms. Harriman to sedentary work and estimated the limitation would last 99 months. AR 424. He listed the MRI and plain lumbar x-rays ("rads") as the bases for his opinion. AR 423.

The ALJ gave "little weight" to Dr. Stephenson's opinions, finding them "inconsistent with [Ms. Harriman's] longitudinal treatment history, her performance on physical examinations, and the objective clinical findings." AR 29. The ALJ reasoned that Dr. Stephenson's assessments predated the amended alleged onset date and so did not indicate Ms. Harriman's limitations in

the relevant period. He also expressed doubt about the 99-month duration of Ms. Harriman's impairments that Dr. Stephenson estimated in December 2013, noting that Dr. Stephenson had estimated a 3-month duration in October 2013, and did not explain what changed his assessment. The ALJ further discounted Dr. Stephenson's opinions because Dr. Stephenson based them on Ms. Harriman's self-reports.

Ms. Harriman does not challenge the ALJ's determination that she was "not entirely credible." AR 30. But she asserts that the reasons the ALJ gave for rejecting Dr. Stephenson's assessment are not specific and legitimate, and that substantial evidence does not support them. Dkt. 12, p. 6. The Court agrees.

The ALJ's first explanation—that Dr. Stephenson's opinions are inconsistent with the objective findings and Ms. Harriman's treatment history—is neither specific nor legitimate. The ALJ stated in boilerplate language that Dr. Stephenson's assessment was "inconsistent with . . . the objective clinical findings set forth above." AR 29. But the ALJ did not explain that inconsistency, and it is not apparent from those records. *See* AR 387, 392, 416-17, 437-38, 443, 482, 486, 491-92, 495, 511, 513, 533, 536, 551-52, 555-56, 559-60, 563, 594-95.

Further, the ALJ appeared to improperly "cherry-pick" parts of the medical record that indicated Ms. Harriman was in some respects healthy, while failing to consider parts of the record supporting Dr. Stephenson's opinion. AR 28; *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("the ALJ improperly cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment") (citations omitted). Among the medical records that the ALJ found did "not substantiate the severity of [Ms. Harriman's] allegations of disabling limitations," he listed several medical findings regarding Ms. Harriman's right wrist,

REPORT AND RECOMMENDATION - 6

the fact that Ms. Harriman "continued to smoke despite medical advice to quit," and a behavioral pattern that the ALJ characterized as "drug seeking." AR 28-29, 386-87, 429, 490. The ALJ did not explain how these records contradict Dr. Stephenson's findings, nor do those records appear to do so.

Also in discussing the inconsistency of the medical evidence with Ms. Harriman's allegations, the ALJ noted Dr. Tran-Wong's March 2014 observation that Ms. Harriman's "gait and station were normal, that she appeared healthy, and that she denied any impact from her pain on her daily activities," AR 28, 442-43. But the ALJ failed to note that Ms. Harriman complained to several other medical providers that daily activities aggravated her symptoms. AR 550, 554, 558, 594, 602, 605. And the ALJ did not explain how a normal gait and station contradicted Dr. Stephenson's findings regarding Ms. Harriman's limitations, which relate to her ability to lift, carry, crouch, and pull, not her ability to walk. AR 422-23.

The ALJ also noted that an April 2015 "MRI was very similar to previous testing in 2013." AR 28. He did not mention what that testing showed, however ("multilevel degenerative disease . . . resulting in multilevel canal and neural foraminal stenosis," including "severe foraminal stenosis" in two places, AR 513). And he did not acknowledge that the 2013 MRI testing was the basis for Dr. Stephenson's opinion, and that a similar MRI in 2015, would thus support rather than contradict that opinion.[1]

The ALJ's second explanation is not legitimate, either. The ALJ found that Dr. Stephenson's 2013 opinions were not relevant to the disability determination because Dr. Stephenson made them before the amended onset date. Generally, "[m]edical opinions that

---

[1] The ALJ's discussion also contained the following errors: it included duplicate paragraphs, AR 27; it frequently misused the pronoun "he" for Ms. Harriman; and it misidentified the year when Ms. Harriman established care with Dr. Lewis and had a well woman exam. AR 28, 490, 494.

REPORT AND RECOMMENDATION - 7

predate the alleged onset of disability are of limited relevance," particularly "where disability is allegedly caused by a discrete event." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Nonetheless, an ALJ must consider "all evidence in [a claimant's] case record" in determining whether the claimant is disabled. 20 C.F.R. § 404.1520.

Ms. Harriman initially filed for SSI/DIB with an alleged onset date of May 31, 2009. AR 23. She later amended this date to March 3, 2014. AR 23, 45-46. Dr. Stephenson thus gave his opinions three and five months before the amended alleged onset date, but after the original onset date and after the discrete event allegedly exacerbating Ms. Harriman's disability. *See* AR 46, 411, 420 (August 2013 motorcycle accident). Given this close time period, there is minimal concern that Ms. Harriman's level of impairment changed considerably between Dr. Stephenson's assessments and the amended alleged onset date.[2]

Likewise, the ALJ's explanation for rejecting Dr. Stephenson's 99-month duration estimate was not specific or legitimate. The ALJ acknowledged that an MRI performed between Dr. Stephenson's first and second evaluations showed several impairments to Ms. Harriman's lumbar spine. AR 28, 416-17. Dr. Stephenson wrote in December 2013, that he reviewed that MRI study along with lumbar x-rays ("rads"). AR 423. He also received notes from Ms. Harriman's physical therapist. AR 420. The only reasonable inference from this record is that Dr. Stephenson changed his diagnosis from a "temporary" impairment to a longer one based on the new information he received. *See Sample*, 694 F.2d at 642. The ALJ needed a specific and legitimate reason to disregard that estimate, and he did not offer one.

---

[2] In addition, the Social Security Administration's Program Operations Manual System (POMS) instructs employees to consider medical history covering the earliest 12-month period before the claimant's application filing date or date last insured. POMS DI 22505.001, *located at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0422505001. For Ms. Harriman, those dates are January 24 and December 31, 2014, respectively. AR 23-24. While POMS does not impose judicially enforceable duties on either the ALJ or the Court of Appeals, *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068 (9th Cir. 2010), that guidance would require the ALJ to consider Ms. Harriman's medical history back to January 2013.

The ALJ further erred in discounting Dr. Stephenson's opinion as based primarily on Ms. Harriman's self-reports. The ALJ's explanation on this point is brief and conclusory, and the record does not support it. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014). First, an ALJ must find that an opinion is "more heavily based on a patient's self-reports than on clinical observations" to reject it on that basis. *Ghanim*, 763 F.3d at 1162. Here, the ALJ only found that Dr. Stephenson relied "in part" on Ms. Harriman's self-reports. AR 30. Second, even if the ALJ had found that Dr. Stephenson relied "more heavily" on self-reports from Ms. Harriman than on Dr. Stephenson's own observations, the record would contradict such a finding. As noted above, Dr. Stephenson cited objective medical evidence for his findings. AR 411-26. Moreover, he actually declined to make findings based on Ms. Harriman's self-reports: although Ms. Harriman reported trouble standing and walking and numbness in her hands, Dr. Stephenson did not find such limitations and instead found that osteoarthritis limited Ms. Harriman lifting, carrying, crouching, and pulling. AR 422-23.

Accordingly, on remand the ALJ should reevaluate Dr. Stephenson's opinion that Ms. Harriman's osteoarthritis limits her to sedentary work.

      B.     <u>Dr. Stafford</u>

Dr. Bertha Safford was Ms. Harriman's treating physician when she examined Ms. Harriman in December 2015. Like Dr. Stephenson, Dr. Safford opined that Ms. Harriman is limited to a sedentary level of exertion, adding that Ms. Harriman "requires frequent position changes" and can "work but not lift bend or stoop." AR 29, 599. She estimated that these limitations would last indefinitely. AR 599. Dr. Safford based this opinion on her own examination and her review of an April 2015 MRI. AR 598. She diagnosed Ms. Harriman with

moderate-to-marked chronic lumbar back pain making her "unable to do lifting, repetitive bending, [or] stooping." AR 598.

The ALJ gave Dr. Safford's opinion little weight, too, finding that it was internally inconsistent with her examination of Ms. Harriman. In support of this finding the ALJ listed some of Dr. Safford's objective findings: that Ms. Harriman had normal posture and gait, could squat fully and rise without difficulty, could flex her lumbar spine to finger tips at her lower shins, had normal lateral lumbar spine motion, had full bilateral hip range of motion, and had "2+ deep tendon reflexes in her lower extremities with down-going Babinksi's." AR 29. The ALJ observed that Ms. Harriman was a new patient for Dr. Safford. As with his rejection of Dr. Stephenson's opinion, the ALJ found that Dr. Safford based her opinion "in part" on Ms. Harriman's self-reports. AR 30.

The Court concludes that the ALJ's reasons for discounting Dr. Safford's opinion were not specific and legitimate, for reasons substantially similar to those discussed above with respect to Dr. Stephenson's opinion. First, even if—as the Commissioner implies—Ms. Harriman being new to Dr. Safford would decrease the probative value of Dr. Safford's opinion, Ms. Harriman was not new to Dr. Safford's clinic. While Dr. Safford had not examined Ms. Harriman before, Ms. Harriman established care at the clinic in April 2014, and Dr. Safford's note regarding Ms. Harriman's April 2015 MRI indicates that she was aware of the findings obtained from Ms. Harriman's previous visits. AR 494, 598, 609. Dr. Safford reviewed that MRI and performed a physical exam. AR 598. The ALJ should thus have accorded Dr. Safford's opinions the weight of an examining physician's.

Second, the ALJ was incorrect that Dr. Safford's observations and opinions were internally inconsistent. *See* AR 29. The ALJ did not explain this conclusion, and the record does

not support it. Dr. Safford's findings that Ms. Harriman had "normal posture and gait" and could squat without difficulty are not inconsistent with her opinion, as Dr. Safford opined that Ms. Harriman could stand and walk and did not list squatting as an impaired action. AR 29, 598-99, 604. Instead, Dr. Safford limited Ms. Harriman's ability to bend, stoop, lift, and carry. Those limitations appear to be consistent with Dr. Safford's objective findings regarding Ms. Harriman's lumbar range of motion and positive straight leg raising and her review of Ms. Harriman's April 2015 MRI. AR 598, 604, 609. The ALJ thus appears to have "cherry-picked" Dr. Safford's benign findings while ignoring findings that supported her diagnosis. *See, e.g.*, AR 604 ("lumbar spine has multi-level degenerative changes resulting in several levels of mild-moderate central and foraminal stenosis").

Accordingly, on remand the ALJ should reevaluate Dr. Safford's opinions on Ms. Harriman's functional limitations.

### C. Dr. Hoskins

Dr. Hoskins, a medical consultant for the Washington State Department of Social and Health Services, reviewed Ms. Harriman's medical records in October 2014, and opined that she was capable of a light level of exertion. AR 29, 120-29. Dr. Hoskins considered Dr. Stephenson's December 2013 opinion and found it "not supported by the objective findings." AR 125. In support of a light-work RFC, Dr. Hoskins explained: "documented modest [lumbar disc degenerative disorder] without noting displacement of perineural fat at any level. The degree of pain alleged and the use of chronic narcotics are not validated by the MRI. . . . There is a suspicion of drug seeking . . . ." AR 126.

The ALJ gave "significant evidentiary weight" to Dr. Hoskins's opinion. AR 29. He wrote that Dr. Hoskins's opinion was consistent with Ms. Harriman's longitudinal treatment history, performance on physical exams, "and the objective clinical findings set forth above." AR

29. Unlike Dr. Stephenson and Dr. Safford, however, Dr. Hoskins neither treated nor examined Ms. Harriman. When "a nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician," the ALJ can reject the treating physician's opinion "only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, the ALJ failed to give specific, legitimate reasons for accepting Dr. Hoskins's opinion while rejecting the contradicting opinions of the treating physicians.

Dr. Hoskins's opinion was brief and conclusory. AR 124-27; *see Batson*, 359 F.3d at 1195. He also based it on an incomplete record, as he did not list the April 2014 MRI among the medical records he received, and his review came before Dr. Safford's medical records and opinions and Ms. Harriman's 2015 physical therapy and clinical records. AR 121-23; *see* AR 462-79, 549-61, 594-95. In short, the ALJ erred by failing to provide valid reasons for crediting Dr. Hoskins's opinion, as he based them only a partial review of Ms. Harriman's records, while discrediting the contradicting opinions of doctors who examined and treated Ms. Harriman. While the Commissioner asserts that the ALJ simply chose between reasonable interpretations of the evidence in the record, the legal errors in the ALJ's decision, and the record's lack of support for it, render his interpretation unreasonable. *See Hoffman*, 785 F.2d at 1425.

Accordingly, on remand the ALJ should reassess the relative weights he accorded Dr. Hoskins's opinion and the opinions of Ms. Harriman's treating and examining physicians.

II.  <u>The ALJ's RFC Assessment</u>

At step four of the Commissioner's sequential evaluation process, the ALJ uses the claimant's RFC assessment to determine whether the claimant can do his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the ALJ uses the RFC

REPORT AND RECOMMENDATION - 12

assessment to determine whether he or she can do other work. Social Security Ruling (SSR) 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work he or she can perform based on all of the relevant evidence in the record. *Id.* An inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ must also discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

Based on the above determinations about the medical evidence, the ALJ concluded that the record supported some limitations in Ms. Harriman's ability to work and that the RFC adequately accounted for those limitations. He found Ms. Harriman had the RFC "to perform light work" under the regulations: "She can occasionally balance, stoop, kneel, and crouch. She cannot crawl or climb ladders, ropes, scaffolds, ramps, or stairs. She can frequently handle and/or finger bilaterally. She must avoid concentrated exposure to vibration, pulmonary irritants, and hazards." AR 27. But because, as discussed above, the ALJ erred in failing to properly evaluate the opinion evidence from Dr. Stephenson, Dr. Safford, and Dr. Hoskins, the ALJ's RFC assessment did not completely and accurately describe all of Ms. Harriman's limitations. Accordingly, the ALJ erred in determining based on that assessment that Ms. Harriman could perform her past relevant work.

III.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the

national economy the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d), (e), 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. This Court will uphold an ALJ's step five determination if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found Ms. Harriman could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience, and RFC as Ms. Harriman. AR 30-31, 71-72. But because, as discussed above, the ALJ erred in assessing Ms. Harriman's RFC, the hypothetical question the ALJ posed to the vocational expert—and thus that expert's testimony and the ALJ's reliance thereon—was neither supported by substantial evidence nor free of legal error.

IV. <u>Remand for Further Administrative Proceedings</u>

The Court is authorized to reverse with, or without, a remand. *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1099 (9th Cir. 2014). The district court has discretion to reverse and remand for an award of benefits without a rehearing, and credit evidence that was rejected by the ALJ. 42 U.S.C. § 405(g); *Garrison,* 759 F.3d at 1020-21. A reversal and remand for award of benefits is appropriate if the ALJ failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and the record is clear

that if the rejected evidence is taken into consideration there should be a finding of disability. *Burrell v. Colvin,* 775 F.3d 1133, 1141-42 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted). However, if the court determines that the record as a whole creates a serious doubt as to whether the plaintiff is disabled within the meaning of the Social Security Act, then the court should remand. *Burrell*, 775 F.3d at 1141.

Because the above analysis shows that issues of fact still remain regarding the medical opinion evidence of Ms. Harriman's physical limitations, and the unresolved factual issues would necessarily affect the analysis of step four (plaintiff's RFC) and step five (her ability to perform other jobs exiting in significant numbers in the national economy), the Court has determined that a remand for further consideration of those factual and legal issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly determined Ms. Harriman to be not disabled, and therefore that it reverse the ALJ's decision and remand this matter for further administrative proceedings.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **June 30, 2017**, as noted in the caption.

Dated this 14th day of June, 2017.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15